## STEVENS *v.* THE STATE.

Neither under the evidence nor under the statement of the accused was the offense of voluntary manslaughter involved in the case, and the court properly refused to charge the jury upon that subject.

No. 1181. MARCH 15, 1919.

Indictment for murder. Before Judge Walker. Wilkes superior court. September 24, 1918.

*Colley & Colley,* for plaintiff in error.

*Clifford Walker, attorney-general, R. C. Norman, solicitor-general,* and *M. C. Bennet,* contra.

BECK, P. J. Will Stevens was tried under an indictment charging him with the offense of murder, it being alleged that he did kill and murder one Hattie Thomas. Upon the trial of the case the jury returned a verdict of guilty, with a recommendation. The accused made a motion for a new trial, which was overruled.

The only ground of the motion for a new trial urged in the brief of counsel for the plaintiff in error is based upon the contention that the court erroneously failed to give in charge to the jury the law of voluntary manslaughter, counsel insisting that this grade of homicide was involved in the evidence in the case. With this contention we can not agree. The evidence in the case is not voluminous. That which bears upon the only question raised in the case is contained in the testimony of a few eye-witnesses who stated briefly the circumstances of the killing. Excepting the witnesses who were introduced by the State for the purpose of impeaching the testimony of the witness Jim Fink, the testimony for the State made a case of unprovoked murder.

Witness Jim Fink testified: "She [the deceased] called my wife and says 'Come on out here, Clara; I want you to hear this mess.' Clara went on down there around them, and when I went on down there Gene [the husband of the deceased] tells Will, 'You are a lie,' and Will says, 'You are a lie; I didn't say so;' and Gene's wife Hattie was standing up there, and Hattie said, 'Will, you are a lie; you know you did say so;' and Will says, 'Looks like you have got it in for me; I haven't bothered you all.' She turned around and looks at Gene and Gene looks at her. She pulls a pistol up in her apron like that, a nickel-plated pistol; she pulled it up, I saw it, and Will shot her. He just beat her to it; that's all. If he hadn't shot her she would have killed him. I aint going to tell no lie for Gene or Will. I got shot. When Hattie was shot Gene runs to her and says, 'Gi'me the pistol,' and he grabbed it out of her apron and took out after Will. That's what he done, I will tell the truth about it. She had this hand on her apron. The pistol come out, but when she fell Gene grabbed the pistol and run after him, about a hundred yards I guess," Clara Fink testified: "She [the deceased] come on nearly to my house and called me. She says to me, 'Step out here a little bit,' and I says, 'What do you want? I haven't got time, I am busy;' and she says, 'Come on, it won't take long. I just want you to come down here and hear what me and Gene got to say to Will.' I goes on down there with her, and when I got down there Gene and Will were swapping lies with each other; and Gene says, 'Will, you are a lie; you did say so;' and Will says to Gene, 'You are a lie; I didn't say it;' and Will says, 'Look like you all got it in for me; look like you all want to get something. Don't call me another lie.' Hattie looks to Gene, and Gene looks to Hattie. Hattie repeats the lie there again, and as she repeats it again she had a pistol in her apron, and as she called him a lie again she raised her pistol, and as she raised her pistol up Gene shot her, and when he had shot her Hattie was falling. Gene run a little piece, and she fell. As she was falling Gene says to Hattie, 'Gi'me the pistol, nigger,'—called her 'nigger,' to Hattie, but Hattie failed to give him the pistol. She had fallen by that time, and Gene runs to Hattie and gets the pistol and made after Will; and that all I know." The defendant, as a part of his statement to the jury, said: "The way this thing started, Gene Thomas come

through the lot where I was feeding, and told me to come on down the path, he wanted to see me; and I went on down there, and his wife was with him, and he stopped and said, 'Let's don't go any further. I want to see you about what you have been telling Mr. Nash I cussed him for.' I says, 'I didn't tell him that.' I told him that 'when Mr. Nash come to my field to see if you were working, that Mr. Nash says for you to go to that new corn, and you says you are getting damn tired of this, and that you was getting damn tired of so much cussing.' One day Mr. Nash and myself were talking along, and I told him, and he went to see Gene, and Gene went to see me; and I says, 'If he sees Gene, Gene will get mad with me,' and so I went to the house and got my pistol. I was expecting him after me. I went on down the path, and he got after me; and I says, 'What is it? You know you told me. What are you going to do about it?' His wife come got close side of me. Gene says, 'You are a lie,' and I says, 'You are a lie, I didn't,' and about that time his wife says, 'You are a lie, you did say it,' and I looked around like that, and when I turned she pulled up her pistol and tried to shoot me, and I had my hand like this, and Gene says, 'I know he has got a pocket full of rocks, but it's all right,' and when I looked at her she pulled up a pistol, and I did like that and shot her, and then Gene went and took the pistol from her, but I didn't want to shoot nobody else. I was just defending my own life. I run, but I saw him coming with the pistol in his hand, and I got in some bushes. I said, 'What I done I was obliged to do to save my life, and I am going back.'"

From the evidence quoted and the statement of the defendant it will be seen that the defendant relied entirely upon the theory of self-defense. The evidence of two of his witnesses and his statement tended to establish the theory that the decedent had in her hand a pistol which she was about to raise, and that acting under the apprehension that his life was in jeopardy the defendant fired in his own defense. There was no suggestion in the evidence for the defendant, or in his statement, that the woman whom he killed was making any attempt to use the pistol in any way, except that she was raising or about to raise it as if to shoot him, and, acting under the fear that she was about to do so, he shot. If the defendant's theory of the case was true, he acted in self-defense.

The evidence for the State, which we will not attempt to set out, made a case of murder—of murder unprovoked except by words. The epithet applied by the woman to the accused could not justify the shooting, nor reduce the homicide from murder to manslaughter. The theory of the State and the theory of the defense made by the evidence and the defendant's statement were duly presented to the jury in the court's charge; and the failure of the judge to charge the law of voluntary manslaughter affords no ground of complaint to the plaintiff in error.

*Judgment affirmed. All the Justices concur.*